UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CORNELIUS KAIHAU HOLANI,

Petitioner,

v.

SERGIO ALBARRAN, et al.,

Respondents.

Case No. 26-cv-8013

**ORDER GRANTING PETITIONER'S MOTION FOR A TRO**

Re: ECF No. 3

The motion for an emergency TRO is GRANTED.

Because the issues presented by the motion are time sensitive, this Order assumes that the reader is familiar with the facts, the applicable laws, regulations, and legal standards, and the substance of the complaint, motion, and subsequent briefing. All facts discussed below are taken from the complaint, motion, or reply brief, and attached exhibits. ECF Nos. 1, 3, 13.

Briefly, Petitioner Cornelius Kaihau Holani is a 20-year-old citizen of New Zealand of Tongan ethnicity. On July 13, 2023, when he was 17 years old, he was lawfully admitted to the United States on the Visa Waiver Program ("VWP"). His mother is a green card holder who obtained her green card through marriage to Mr. Holani's stepfather, who is a U.S. citizen. Petitioner serves as the caregiver for his elderly grandmother in Seattle, and is deeply involved in his church community, where he volunteers teaching traditional Tongan dance to the children of his church. He is close to his mother and his stepfather, both of whom live in Oakland. Mr. Holani has no criminal record and no history of immigration enforcement contact of any kind.

On the morning of July 31, 2026, ICE officers seized Mr. Holani at Oakland International Airport as he waited to board a domestic flight home to Seattle. Petitioner was approached by four plainclothes ICE agents who told Mr. Holani not to make a scene. After Mr. Holani

confirmed his identity the officers handcuffed him, transported in a vehicle, and then moved him to a second vehicle, at which time they handcuffed his legs and put a chain around his waist. The officers then transferred Mr. Holani to 630 Sansome Street in San Francisco. There, in the ICE office, having been unlawfully detained without due process, the government coerced Mr. Holani to sign a document. When Mr. Holani asked whether the document had anything to do with deportation, the officer said, "No, it's nothing like that." Mr. Holani—who never graduated high school—complied with the officer's directive and signing an unknown document that the government now relies upon as a basis for asserting that Mr. Holani waived his right to contest his removal from the country or to adjust his status.

The Petitioner has shown a strong likelihood that he is entitled to a pre-deprivation hearing before an immigration judge. Petitioner has a strong liberty interest in remaining free from detention. *Mathews v. Eldridge*, 424 U.S. 319 (1976). He has traveled by flight between Seattle and Oakland on three separate occasions without incident. Reply Ex. C ¶ 7. DHS, through TSA, was necessarily aware of Mr. Holani on each of his previous commercial flights, yet they allowed him to present himself at the security check point and continue on his way. Reply at 12. "Although the government did not detain and then release [Mr. Holani], it made a decision not to detain h[im] in the first place; Petitioner thus has the same liberty interest in h[is] continued freedom as an individual initially detained." *Kharitonova v. Albarran*, 2026 WL 531441 (N.D. Cal. Feb. 18, 2026); *see also Quispe v. Chestnut*, No. 1:25-cv2002 CSK, 2026 WL 654577, at *3 (E.D. Cal. Mar. 9, 2026) (ordering release of VWP overstay because, among other things, petitioner "should have been provided [a pre-deprivation] hearing *before* she was detained.").

The Petitioner has also made a sufficient showing as to the other factors that the Court must consider before granting a TRO. Unconstitutional deprivation of physical liberty constitutes irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). As for the balance of equities and the public interest factors of the TRO inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This inquiry favors the Petitioner because the potential harm to the Petitioner from detention is significant, and the Government at most faces a short delay in detaining Petitioner if it ultimately demonstrates

2

that detention of each is necessary to prevent flight or danger to the community. *See Bautista Pico v. Albarran*, No. 4:25-cv-08002-JST, ECF No. 5 at *6 (Sept. 19, 2025).

Accordingly, the Court ORDERS the Government to return Petitioner to the Northern District and release Petitioner from custody as soon as practicable and no later than **11:00 p.m. PT today, August 4, 2026**.

The Government shall file a status report by 9:00 a.m. on Wednesday, August 5, 2026, affirming that Petitioner has been released.

Additionally, the Government is enjoined and restrained from re-detaining Petitioner until the Court has held a hearing with the parties or the Government has provided Petitioner a pre-deprivation hearing before a neutral decisionmaker. The Government is also enjoined and restrained from removing Petitioner from the United States.

The Court maintains the briefing schedule set at ECF No. 12 and ORDERS the Government to respond to Petitioner's filing by no later than 5:00 p.m. on August 5, 2026. The Court SETS a Zoom hearing for Thursday, August 13, 2026, at 10 a.m.

**IT IS SO ORDERED.**

Dated: August 4, 2026 at 5:54p.m.

Noël Wise
United States District Judge